# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KOFI EASTERLING,

      Plaintiff,

      v.                                Case No. 10-CV-779

WILLIAM POLLARD, MICHAEL BAENEN,
MIKE DONOVAN, and CATHERINE FRANCOIS,

      Defendants.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 29), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 31), AND DISMISSING THIS ACTION

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis on claims under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). The parties have filed cross motions for summary judgment. For the reasons stated herein, plaintiff's motion for summary judgment will be denied and defendants' motion will be granted.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248.

A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTUAL BACKGROUND[1]

Plaintiff, Kofi A. Easterling, has been incarcerated at Green Bay Correctional Institution (GBCI) since May 26, 2009. Defendant William Pollard was the Warden of GBCI at all times relevant; defendant Michael Baenen is the GBCI Deputy Warden; defendant Michael Donovan is a GBCI Chaplain; and defendant Catherine Francois is an Inmate Complaint Examiner at GBCI.

Plaintiff is a Sunni Muslim. He avers that on July 1, 2010, he informed Chaplain Donovan that the Holy Month of Ramadan, in which traditional Sunni Muslims fast for thirty days, would start on July 21, 2010. According to plaintiff, Chaplain Donovan ignored his

---

[1] Facts are taken from Defendants' Proposed Findings of Fact, which are undisputed. Facts are also taken plaintiff's Statement of Facts section from his motion for summary judgment.

advisement and mailed a memo to the Muslim Community falsely stating the Holy Month of Ramadan would begin on August 11, 2010. Plaintiff filed several inmate complaints but Inmate Complaint Examiner Francois rejected and dismissed them. Additionally, plaintiff forwarded letters and complaints to Warden Pollard and Deputy Warden Baenen, but they agreed with defendant Francois. Consequently, plaintiff claims that defendants failed to consider traditional Sunni Muslim practices and Islamic law.

The Division of Adult Institutions (DAI) is part of the Wisconsin Department of Corrections (DOC) that oversees nineteen correctional institutions and the Wisconsin Correctional Center System, which encompasses sixteen correctional centers throughout the state. The DAI Religious Practices Advisory Committee (RPAC) reviews inmate religious issues that arise within DOC; consults with DOC staff and volunteers, members of religious groups in the community, and the Wisconsin Department of Justice on religious issues; applies, reviews, and/or revises various DOC internal religious policies and procedures; and resolves religious issues in adult correctional institutions to promote consistency and fairness within DAI and various religious faiths.

It is the policy of the DOC that incarcerated inmates have opportunities to pursue lawful practices of the religion of their choice, consistent with security practices and principles, inmate rehabilitative goals, health, safety, allocation of limited resources, as well as the responsibilities and needs of the correctional institution and facilities. Over the years, the DOC inmate population has increased steadfastly, along with the number of state correctional institutions required to house the inmates. During this period, there has been no corresponding increase in correctional institution staff, and, at various times the state faces significant budget deficits that have necessitated staff reductions and/or hiring

3

freezes. At the same time, the nature and type of inmates in the system have become more problematic with more inmates facing lengthy or life without parole sentences, an increase in gang problems, and other issues. All of these factors have resulted in unprecedented pressures and stresses on state correctional institutions and staff from a security, administrative, and financial standpoint and have affected corrections operations in virtually all areas. Therefore, it has been the goal of RPAC to take steps to minimize and alleviate some of these pressures and stresses, and to improve consistency between the institutions.

It is the policy of DOC to ensure that inmates have opportunities to pursue lawful religious practices of the religion of their choice, but all religious practices must be consistent with security practices and principles, rehabilitative goals of inmates, health and safety concerns, and the allocation of limited resources. Due to the equitable allocation of limited resources, DOC and RPAC must make determinations related to religious activities that meet the religious needs of the inmate population, but it is not feasible to accommodate each inmate's request, nor is it feasible to accommodate the religious practices of every religious faction of incarcerated inmates.

The religious beliefs and practices inmates in DOC custody are formally allowed to exercise are set forth in DAI Policy 309.61.01, which was implemented to ensure that incarcerated offenders have uniform opportunities to pursue lawful religious practices of the religion of their choice. To reasonably manage the coordination of religious services and study groups, and to make an effort to accommodate inmates' religious needs, inmates are required to designate their religious preference. DAI Policy and Procedure 309.61.01 establishes the concept of "Umbrella Religion Groups," which are inclusive

4

groups designed to appeal to a wide range of religious beliefs within a given faith group. The umbrella religion groups are the Protestant, Islam, Native American, Catholic, Jewish, Eastern Religions, and Pagan. For example, a Protestant umbrella group would meet the needs of denominations such as Lutheran, Baptist, Methodist, Presbyterian, etc.

The DOC does not have the resources and staff to accommodate every religious activity that a religious group or faction may deem necessary or important in the practice of their religion. Pursuant to DAI Policy and Procedure 309.61.01, to participate in the religious services or study groups associated with a given umbrella religion group, an inmate must complete a DOC 1090, Religious Preference form, designating a religion within that group as that inmate's religious preference. The use of umbrella groups allows the department to use its limited resources as efficiently as possible to accommodate the religious practices of the greatest number of inmates. Without the use of umbrella groups, inmates would likely have less opportunities to practice their religions because resources such as staff time, institution funds, and space would have to be divided among an ever-increasing number of different religions and religious factions.

Umbrella groups allow similar religions to share resources, which allows, among other things, sufficient time for more meaningful religious services and religious feasts. Without the use of umbrella groups, institutions would be required to use limited resources to find and provide a recognized spiritual leader for every new religious group; provide space to conduct the activity; provide staff to monitor religious services and religious study; accommodate additional annual feasts; accommodate additional dietary restrictions and potentially allocate business office staff time to create and manage a segregated account for funds donated to the group. Institutions make every effort to facilitate an inmate's

observance of days of special significance that are consistent with the inmate's designated religious preference.

The GBCI Chapel provides religious services for all of the umbrella religious groups in addition to special religious programming. The Chaplains also provide crisis intervention services as well as support programming for inmates as needed, and outside volunteers provide a myriad of programming for various religious affiliations.

Plaintiff submitted three forms DOC-1090, which DOC utilizes to identify inmates' religious preference. The most recent form DOC-1090 was dated May 6, 2004, wherein plaintiff indicated Islam as his religious preference.

Islamic inmates at GBCI are permitted to attend congregate religious services and study groups. They are also permitted to possess approved religious property, including religious books and publications, prayer beads, a prayer rug, a kufi-cap, a religious emblem, and prayer oil. Besides their personal religious property, Islamic inmates may access library books, videotapes, and audiotapes concerning Islamic religious practices and beliefs. Further, Islamic inmates at GBCI may engage in individual religious study, personal meditation and prayer, individual religious observance in their living quarters, correspondence and visits with fellow believers, pastoral visits, and abstain from work or programs for religious observance, upon request.

DOC inmates who have chosen Islam/Muslim as their religious preference are provided the opportunity to participate in the Ramadan fast and activities, which is held once a year. Ramadan is the ninth month of the Islamic calendar, which signifies when the Qur'an was revealed. Ramadan is the holiest of months in the Islamic calendar, and fasting in this month is spent by Muslims during the daylight hours from dawn to sunset.

Following the Ramadan fast, inmates may participate in the Eid ul-Fitr, a religious feast that marks the end of the Islamic holy month of fasting, as well as the Eid ul-Fitr Salat, the ritual Islamic prayer typically conducted at the end of the fast and feast.

RPAC relies upon Islamic consultants, who are DOC Chaplains Zackaria Nurdeen and Ron Beyah, to obtain information from a reliable Islamic source related to the start and end dates of the Islamic Ramadan Fast, for which the Eid-Al-Fitr feast follows signifying the end of Ramadan. Islamic inmates are permitted to participate in the Ramadan fast, which is a religious activity conducted once a year at all DOC correctional institutions and centers, and follows with Eid-Al-Fitr, and then the Eid-Al-Fitr Satar.

The DOC Islamic consultants rely upon the dates provided by the Figh Council of North America. The dates provided by the council are provided to all DOC correctional institutions and centers to maintain a uniform manner of allowing Islamic inmates to participate in the Ramadan fasting, and the subsequent Eid ul-Fitr feast. The Fiqh Council of North America is a diversified committee or board of high intellectuals or qualified Imams, who have command of Islamic Law and Jurisprudence, and is an affiliate of the Islamic Society of North America. The Fiqh Council is a reliable source to advise and educates its members and officials on matters related to Islamic religious practices, regardless of sect. The Fiqh Council is the only source for which DOC relies to receive reliable information related to Islamic religious practices, including the start and end dates of Ramadan. The use of the dates provided by the Fiqh Council Of North America for 2010 Ramadan did not in anyway restrict the inmate's ability to practice Ramadan or his Islamic faith.

7

Islam as a religion considers circumstances and situations in all its decisionmaking, and does not hold a person guilty for lawful duties he could not perform because of certain serious circumstances. A Muslim inmate under certain security restriction may not be allowed to leave his/her cell to search for the new moon (crescent), and under these circumstances, would be exempted from physical sighting and should depend only on information about the starting and ending of Fasting through Islamic authority, such as the Fiqh Council.

At no time has Chaplain Donovan had any personal involvement in the determination of when the Ramadan fast is to begin and end. The DOC Ramadan fast dates provided by Chaplains Beyah and Nurdeen are announced to all DOC correctional institutions to maintain uniformity of the Ramadan fast throughout correctional institutions in Wisconsin.

Chaplain Donovan received an email from Chaplains Nurdeen and Beyah announcing the dates of the 2010 Ramadan Fast. On July 9, 2010, Chaplain Donovan wrote a Memorandum related to the 2010 Islamic Ramadan Fast, and attached an announcement to the memorandum. The July 9, 2010, Memorandum was directed to various staff, including the Food Service Office, and all housing unit staff. The announcement stated, in part: The Ramadan Fast is scheduled to begin at dawn on Wednesday, August 11, 2010, and will end after sunset on Thursday, September 9, 2010. (Affidavit of Michael Donovan ¶ 21, Ex. 1003.) Staff were instructed to display the announcement where inmates could see it or distribute it to inmates on housing units. Muslim Inmates were instructed to sign up to participate in the Ramadan fast by July 30, 2010. After the inmate names were compiled, Chaplain Donovan created a Ramadan

participant list, which was distributed to the Food Service Office and housing units so staff were aware of the inmates who requested to participate in the Ramadan fast. While plaintiff could not designate his own dates for the Ramadan fast, he could have participated in the 2010 Ramadan fast observed at GBCI that began on August 11, 2010, and ended on September 9, 2010.

Any gathering of inmates implicates basic security issues and concerns. With religious feasts and fasts, there is also additional workload for Food Service staff, as typically the food for the feast has to be kept separate, maintained at appropriate temperatures, and served separately for either delivery to what is typically not a dining room area, or be served separate from the regular meal service. For fasts, unit staff need to be trained and informed of the policies for food delivery and the times for fasting and meals. Moreover, they must track and monitor the participants. Arrangements for the feast and fasts must be made and coordinated by staff, inmates approved to attend must be notified, approved outside religious visitors must be notified, outside religious visitors must be screened and processed into the institution, and additional security staff must be available to supervise the feasts.

If each Islamic religious faction, such as the Sunnis, were to be accommodated with different dates for the Ramadan fasting, the Eid-Al-Fitr and Eid-Al-Fitr Salat, it would create a huge drain on prison resources. All of the coordination, staff preparation, training, space and resources would have to be expanded for each individual's or religious sect's interpretation of the fasts and feasts. DOC and its institutions do not have the resources to accommodate these individual requests.

9

Historically, DOC has had problems with gangs attempting to take over religious groups and religious group becoming a cover for gang activity and problems with inmates who are not members of certain religious groups reacting negatively and viewing religious feasts as favoritism towards some inmates. These problems have raised the DOC's concern regarding animosity among inmate groups, possible violence and/or a major disturbance, religion shopping to enable inmates to attend various religious feast meals, and unwarranted demands for special foods with questionable religious significance.

The designation of one feast and fast for Ramadan furthers DOC's interests in better monitoring for these types of security threats and preventing security risks from occurring. Though inmates of the same religion may only eat together once a year to celebrate a "religious feast," they are not prevented from celebrating their religious beliefs in the following ways: (1) a special congregate service; (2) religious diet request; (3) individual study; (4) personal meditation; (5) utilization of religious books and/or property; (6) individual religious observance in their living quarters; (7) correspondence with fellow believers; (8) pastoral visits; (9) additional foods meeting religious dietary principles either through purchase in the institution canteen or through approved donations; and (10) requesting to abstain from work or program.

There is no Islamic authority to support plaintiff's allegations that Ramadan is never in the same season and always starts when the new moon is physically sighted. Also, while plaintiff alleges that GBCI forced traditional Sunni Muslims under a Gregorian calendar to violate the Holy Month of Ramadan and invalidated his religious fast, it is undisputed that there is no place in Islamic history that Muslims used Julian, Gregorian, or Jewish calendars, and DOC has not used the Gregorian calendar to calculate the end

10

and start of Ramadan. Additionally, Muslims have always used lunar calculations, and astronomical calculations are permissible in time of emergencies or situations where the physical sighting of a crescent or new moon is impossible for many reasons which would include weather conditions or situations where a Muslim is incarcerated and is not able to come out of his cell, or an inability to have access to the out of doors to make a physical sighting of the crescent moon. The start and end of the Ramadan fast have continuously been calculated based on astronomical calculations by the Fiqh Council and this does not in any way violate the sacredness of the Ramadan fast.

## ANALYSIS

Section 3 of RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). As an initial matter, to the extent plaintiff seeks monetary damages against the defendants in their official capacities, such claim is barred by the state's sovereign immunity. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (citing *Sossamon v. Texas*, — U.S. —, 131 S. Ct. 1651, 1658-61 (2011)). Also, plaintiff's damages claim against defendants in their individual capacities cannot be based on RLUIPA because the Act does not create a cause of action against state employees in their personal capacities. *Grayson*, 666 F.3d at 451 (citing *Nelson v. Miller*, 570 F.3d 868, 886-89 (7th Cir. 2009)). Although money damages are not available for plaintiff under

11

RLUIPA, the Act does authorize injunctive relief. Thus, the court turns to the merits of this claim.

As indicated, RLUIPA forbids institutions that receive federal funds from substantially burdening patients' exercise of religion-even by rules of general applicability-unless the burden is the least restrictive means of furthering a compelling government interest. *See* 42 U.S.C. § 2000cc-1(a); *Cutter v. Wilkinson,* 544 U.S. 709, 715 (2005); *Ortiz v. Downey,* 561 F.3d 664, 670 (7th Cir. 2009). A substantial burden exists only where a government action "bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Nelson,* 570 F.3d at 878 (quoting *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003)). Only upon plaintiff's showing of a substantial burden on his religious exercise will the evidentiary burden shift to the institution, which must then show that the challenged rule is the least restrictive means of pursuing a compelling government interest. *See Koger v. Bryan,* 523 F.3d 789, 796 (7th Cir. 2008).

Here, plaintiff's RLUIPA claim fails because he produced no evidence of a substantial burden on his religious exercise. He claims that defendants' commencement of the Ramadan Fast on August 11, 2010, invalidated his religious fast because traditional Sunni Muslims began the Ramadan Fast on July 21, 2010. However, it is undisputed that the DOC Islamic consultants, Chaplains Nurdeen and Beyah, provided the Ramadan Fast dates to Chaplain Donovan, who announced the information at GBCI. It is also undisputed that Chaplains Nurdeen and Beyah relied upon dates provided by the Fiqh Council of North America, an affiliate of the Islamic Society of North America. Lastly, plaintiff was provided the opportunity to participate in the 2010 Ramadan Fast.

12

Although plaintiff insists that the 2010, Ramadan start date for Sunni Muslims was July 21, however, he has not provided any evidence to support the assertion. Speculation of this sort does not provide a material factual dispute as to whether plaintiff's religious exercise has been substantially burdened thereby warranting a trial. *See Borzych v. Frank,* 439 F.3d 388, 390 (7th Cir. 2006) (noting the insufficiency of a plaintiff's "unreasoned say-so" to create a triable issue).

Finally, because plaintiff failed to meet his burden under RLUIPA, he similarly failed to establish that defendants burdened a "central religious belief or practice" in violation of the Free Exercise Clause and therefore defendants are entitled to summary judgment on the First Amendment claim. *See Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989); *see also*, *DeSimone v. Bartow*, 355 Fed. Appx. 44, 46 (7th Cir. 2009) (unpublished); *Gelford v. Frank*, 310 Fed. Appx. 887, 889 (7th Cir. 2008) (unpublished). Therefore,

IT IS ORDERED that plaintiff's motion for summary judgment (Doc. 29) is DENIED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Doc. 31) is GRANTED.

IT IS FURTHER ORDERED that this case is DISMISSED.

Dated at Milwaukee, Wisconsin, this 29th day of February, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge